612 A.2d 485

**Harriet Marie FINK, Appellant,**

**v.**

**DELAWARE VALLEY HMO.**

Superior Court of Pennsylvania.

Argued May 27, 1992.

Filed July 13, 1992.

288

290

Mary A. Knight, Philadelphia, for appellant.

Richard H. Martin, Philadelphia, for appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order granting appellee Delaware Valley HMO's (DVHMO's) preliminary objections and dismissing Counts II through XI of appellant Harriet Marie Fink's complaint. Appellant presents the following issue for our review:

Whether the learned trial judge erred in holding 5 U.S.C. § 8901 et. seq. preempts plaintiff's state common law tort claims?

Appellant's Brief at 5.[1] For the following reasons, we quash appellant's appeal as to the dismissal of her counts for interference with contractual relations and punitive damages and affirm as to the remainder of claims.

The instant action arose as a result of appellant's efforts to find a surgeon to operate on her injured shoulder, and appellee's unwillingness to approve the surgery under appellant's medical plan. Appellant filed an eleven-count complaint on December 31, 1990 advancing the following causes of action: (1) breach of contract, (2) intentional infliction of emotional distress, (3) negligence, (4) fraudulent misrepresentation, (5) common law deceit, (6) tortious interference with prospective contractual relations, (7) tortious interference with contractual relations, (8) violation of the Unfair Insurance Practices Act, 40 40 P.S. § 1171.5(a)(10), (9) violation of the Unfair Insurance Practices Act: Bad Faith, 42 Pa.C.S.A. § 8371, (10) medical malpractice, and (11) a claim for punitive damages. Thereafter, appellee filed preliminary objections to appellant's complaint. In its order of September 3, 1991, the trial court sustained the majority of appellee's preliminary objections and dismissed ten of the eleven counts of the complaint, retaining only appellant's contract cause of action. This timely appeal followed.

## A.

■ Before considering the merits of appellant's issues, we must first determine whether the order of the trial court was final and appealable. It is well-settled that only a final order is appealable, unless otherwise provided by statute.

---

1. In her Statement of Questions Involved, appellant also contends that if her common law tort claims are preempted by federal statute, damages under her breach of contract claim should not be limited to the cost of the procedure improperly denied. We must decline to review this issue because appellant does not address it in her brief. Furthermore, this contention is not properly before us as appellant's claim for breach of contract was not dismissed by the court below.

*Praisner v. Stocker*, 313 Pa.Super. 332, 336, 459 A.2d 1255, 1258 (1983) (citations omitted). "In ascertaining what is a final appealable order ... we must look beyond the technical effect of the adjudication to its practical ramifications.... A final order is generally one which terminates the litigation, disposes of the entire case, or effectively puts the litigant out of court." *Jackson v. Moultrie*, 288 Pa.Super. 252, 255, 431 A.2d 1033, 1034–35 (1981) (citations omitted).

 "As a general rule, an order dismissing some but not all counts of a multi-count complaint is interlocutory, and not appealable." *Praisner v. Stocker, supra*, 313 Pa.Super. at 337, 459 A.2d A.2d at 1258. However, this court has recognized that "if the dismissed count states a cause of action that is separate and distinct from the remaining counts, the order dismissing that count is final and appealable; if the dismissed count merely states an alternate theory of recovery, the order dismissing it is interlocutory and not appealable." *Motheral v. Burkhart*, 400 Pa.Super. 408, 583 A.2d 1180 (1990). Thus, a pivotal factor to consider in determining whether an order is final is whether the order has put the aggrieved plaintiff out of court on all theories of recovery asserted against a given defendant for a given loss. *Id.* (citing *Sweener v. First Baptist Church of Emporium*, 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987)).

 In *Cloverleaf Development v. Horizon Financial*, 347 Pa.Super. 75, 82, 500 A.2d 163, 167 (1985), this court held that dismissal of a claim for damages allegedly caused by wrongful interference with negotiations with a third party was final and appealable although a claim for breach of contract remained. We further found that a count averring intentional infliction of emotional distress constituted a cause of action separate from breach of contract. *Id.*, 347 Pa.Superior Ct. at 85, 500 A.2d at 168. Accordingly, we find that appellant's counts raising tortious interference with prospective contractual relations and intentional infliction of emotional distress are separate and distinct from the count for breach of contract.

■ Similarly, in *Hardy v. Pennock Insurance Agency,* 365 Pa.Super. 206, 529 A.2d 471 (1987), we held that where a claim of breach of agreement to provide insurance remained, the order was not final insofar as it dismissed a claim for "negligent breach of contract" but was final insofar as it dismissed claims of misrepresentation, fraud, and deceit and claims based on alleged violations of Unfair Insurance Practices Act and/or UTPCPL. *See also Drohan v. Sorbus,* 401 Pa.Super. 29, 35, 584 A.2d 964, 966 (1990) (the fact that the claims are based upon statutory law indicate that they are separate and distinct from the non-statutory breach of contract claim); *Gabriel v. O'Hara,* 368 Pa.Super. 383, 388, 534 A.2d 488, 490–91 (1987) (denial of petition to amend complaint to include a claim under Unfair Trade Practices and Consumer Protection Law is appealable order because although claims for fraud and breach of contract remained, plaintiffs would be precluded from seeking recovery of damages and attorney's fees to which they may be entitled under the UTPCPL). Thus, we find that appellant's counts for fraudulent misrepresentation, common law deceit, and violation of the Unfair Insurance Practices Act are separate and distinct causes of action.

■ This court recently addressed the issue of appealability where a separate count for punitive damages was dismissed and the only remaining count asserted breach of contract. In *Bash v. Bell Telephone,* 411 Pa.Super. 347, 601 A.2d 825 (1992), we determined that a claim for punitive damages was not final and appealable because the contract action remained unresolved. We reasoned that " 'where one of several counts seeks to recover punitive damages in a complaint alleging breach of contract, a dismissal of that count does not put the plaintiff out of court on his underlying cause of action. Only if appellant is successful in his cause of action of breach of contract does the measure of damages become relevant.' " *Id.,* 411 Pa.Superior Ct. at 352–53, 601 A.2d at 828 (citations omitted). Thus, to the extent the order dismissed the claim for punitive damages, it is not appealable.

■ We must now analyze the counts asserting general negligence, medical malpractice, and tortious interference

with contractual relations. . Preliminarily, we note that Count I, the only count that was not dismissed, states a cause of action for breach of contract, asserting that DVHMO failed to perform its obligation under the contract for health benefits by refusing to pay for the cost of appellant's surgery. As a result, appellant seeks payment of all medical bills, special damages in the amount of $100,000.00 for her bodily harm, wage loss, disfigurement and emotional distress, cost of suit, and other relief deemed just and proper. Count III alleges general negligence on the part of appellee resulting in pain and suffering, mental anguish and other injuries for which appellee seeks an amount in excess of twenty thousand dollars ($20,000.00). The alleged negligence consisted of

(a) failing to provide Harriet Fink full complete information as to correct doctors, hospitals and options for treatment;

(b) refusing and continuing to refuse to pay for plaintiff's medical bills as listed above;

(c) negligently withholding needed medical services from Harriet Fink;

(d) negligently inflicting severe emotional distress and bodily harm to Harriet Fink, including, but not limited to anxiety, sleeplessness, loss of weight, loss of appetite, headaches, severe depression, nausea, cosmetic deformity and a severe loss of quality of her life;

(e) negligently depriving plaintiff of her right to choose between two medically accepted procedures for the treatment of her separated AC-joint;

(f) permitting its employees, who are not medical doctors, to override the recommendations of four physicians;

(g) negligently processing Harriet Fink's application for medical benefits;

(h) conspiring to force Harriet Fink to live with a shoulder deformity.

Complaint at 12.

In determining whether appellant's breach of contract and general negligence claims state separate and distinct

causes of action, we note that this court has adopted the following test for determining whether a breach of contract gives rise to an actionable tort:

The test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contractual obligation (misfeasance) rather than the mere failure to perform (nonfeasance).

*Raab v. Keystone Ins. Co.*, 271 Pa.Super. 185, 187–88, 412 A.2d 638, 639 (1980) (citations omitted).

In the instant matter, we recognize that subsections (a) and (b) of appellant's negligence count resemble allegations of breach of contract, and that it appears to state an alternate theory of recovery. However, the remainder of the allegations contained the negligence count suggest that appellee's conduct extended beyond mere nonfeasance and rose to the level of misfeasance. Further, appellant seeks two different measures of damages under the negligence and breach of contract counts. We do not find appellant's action for general negligence to be encompassed within her claim for breach of contract, and therefore find that they are separate and distinct causes of action.

Similarly, we find that Count X, which asserts a cause of action for medical malpractice, is separate and distinct. In that count, appellant alleged, *inter alia*, that appellee failed to adequately treat appellant, permitted non-medically licensed employees to override the professional opinion of four doctors, failed to obtain plaintiff's informed consent, and failed to supervise the medical performance of its doctors, nurses, and staff. Thus, again appellant alleges improper performance which is distinct from a breach of contract.

Finally, Count VII, captioned Tortious Interference with Contractual Relations, alleges that "DVHMO's employees and/or agents, by providing wrong information to plaintiff Harriet Fink and Drs. Vogin and McPhilemy, and by overriding four medical opinions interfered with plain-

tiff's contract with DVHMO so as to cause a breach of Ms. Fink's contract to receive approved medical services." Since this statement merely rephrases appellant's claim for breach of contract, it constitutes an alternative theory of recovery.

In summary, we find that to the extent the order dismissed appellant's counts raising tortious interference with prospective contractual relations, intentional infliction of emotional distress, fraudulent misrepresentation, common law deceit, violation of the Unfair Insurance Practices Act, general negligence and medical malpractice, it is final and appealable. Insofar as the order dismissed the count raising tortious interference with contractual relations and punitive damages, the order is interlocutory and not appealable. We may now turn to the merits of appellant's appeal.

### B.

The relevant facts are as follows. Appellant, an employee of the United States Government, opted to receive medical coverage from DVHMO. DVHMO's insurance plan is negotiated and approved by the Office of Personnel Management (OPM) pursuant to the Federal Employees Health Benefits Act, 5 U.S.C. § 8901 *et seq.* ("FEHBA").

Appellant sought treatment for a separated shoulder. Three out of four orthopedic surgeons she consulted recommended surgery. However, a DVHMO authorized orthopedic surgeon would not approve surgery. Eventually, an orthopedic surgeon not affiliated with DVHMO performed the surgery at appellant's request. DVHMO refused to authorize payment for the surgery. As a result, appellant instituted a suit alleging injuries and expenses occasioned by the delay in obtaining surgery because of DVHMO's wrongful conduct.

In preliminary objections, DVHMO alleged that appellant's state law contract and tort remedies were preempted by the FEHBA, that appellant had failed to exhaust her available administrative remedies under 5 C.F.R. §§ 890.-105–107, that her claims failed to state causes of action, and that Pennsylvania law does not recognize several of her

causes of action.[2] After our review of the record, we find that appellant's tort causes of action are preempted by federal law.

In the instant case, the contract between DVHMO and appellant is comprised of a brochure issued by DVHMO to its subscribers. The brochure states that DVHMO entered into a contract with the Office of Personnel Management (OPM) as authorized by FEHBA, to provide a comprehensive medical plan. On the cover page of the brochure is a statement providing that "[t]his brochure is the official statement of benefits available to [FEHBA] members and is the sole document you should rely upon. Any supplemental literature you may receive should agree in content with the benefits described in this brochure." Included in that contract is a provision stating that:

> *Federal law governs claims for relief that relate to benefits under the Plan. Damages recoverable under Federal law are limited to the amount of contract benefits in dispute, plus simple interest and court costs.* Under 5 C.F.R. Section 890.107, such legal actions should be brought against Delaware Valley HMO.

Contract at 14 (emphasis added).

The issue before us concerns the extent to which the above contract provision preempts state law remedies. The section of the FEHBA pertaining to preemption provides:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any state of local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

5 U.S.C. § 8902(m)(1).

In determining whether a certain state action is preempted by federal law, one must look to the congression-

---

**2.** However, the trial court did not submit an opinion explaining his reasons for dismissing ten of the eleven counts, and we must infer his reasons for so doing.

al intent underlying the federal law. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) (citations omitted); *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). When Congress does not state explicitly the extent to which it intends to preempt state law, "courts sustain a local regulation 'unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.' " *Allis–Chalmers Corp., supra* (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978)).

■■■ "The policy underlying section 8902(m)(1) is to ensure uniformity in the administration of FEHBA benefits." *Hayes v. Prudential Ins. Co. of America*, 819 F.2d 921, 925 (9th Cir.1987) (citing H.R.Rep. No. 282, 95th Cong., 1st Sess. 1, 4 (1977)), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988). *See Blue Cross & Blue Shield of Fla. v. Dept. of Banking*, 613 F.Supp. 188, 192–193 (D.C.Fla. 1985) (discussion of legislative history of the preemption provision of the FEHBA), *aff'd*, 791 F.2d 1501 (11th Cir. 1986), *reh'g denied*, 797 F.2d 982 (11th Cir.1986); *Hartenstine v. Superior Court*, 196 Cal.App.3d 206, 220, 241 Cal.Rptr. 756, 765 (1987) (discussing OPM's belief that state law claims should be preempted because the imposition of varying state law requirements would undermine the purposes and objectives of the FEHBA), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 234 (1988).

Although an issue of first impression for Pennsylvania courts, the question of the preemptive effect of FEHBA has been addressed by other jurisdictions. For example, in *Myers v. U.S.*, 767 F.2d 1072, 1074 (4th Cir.1985), the Court of Appeals for the Fourth Circuit held that a state law purportedly allowing recovery of attorney's fees in an action involving a health benefit plan was preempted by the FEHBA because the terms of the health plan contract did not provide for attorney's fees. Similarly, in *Hayes v.*

*Prudential Ins. Co. of America,* 819 F.2d 921, 925 (9th Cir.1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988), the Court of Appeals for the Ninth Circuit held that state law causes of action for breach of duty of good faith and fair dealing and breach of California Insurance Code section 790.03 were preempted by the FEHBA. The court rejected the distinction drawn by the plaintiff between a claim relating to the manner in which the defendant processed his benefits and a claim relating to the "nature or extent of coverage of benefits." The Ninth Circuit reasoned that "tort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract." *Id.* at 926 (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213–20, 105 S.Ct. 1904, 1912–16, 85 L.Ed.2d 206 (1985)). Further, the court held that "[b]ecause the state law claims invariably expand appellees' obligations under the terms of the Plan, the claims are inconsistent with the Plan and, hence, preempted under § 8902(m)(1)." *Id. See also Myers, supra* ("a state law which purports to allow recovery of additional benefits not contemplated by a federal insurance contract must be deemed inconsistent.")

The reasoning employed by *Hayes* and *Myers* has been relied upon by the majority of other jurisdictions addressing this issue. *See Federal Plaza Medical Associates v. Palermino,* (1991 WL 29201 (S.D.N.Y.)) (claim that prepayment review process constituted a breach of duty to deal in good faith preempted by FEHBA because state law affords a remedy beyond that provided by the contract, and thus is inconsistent with the contract); *Fuller v. Blue Cross & Blue Shield of Florida, Inc.,* 677 F.Supp. 1131, 1135 (N.D.Fla.1987) (Florida's five-year statute of limitations applicable to actions on written contracts preempted by two-year limitations period contained in provider's contract with OPM to provide government-wide service benefit plan authorized by FEHBA); *Nitschke v. Blue Cross of Montana,* 231 Mont. 113, 117, 751 P.2d 175, 177 (1988) (federal law does not provide for federal employees' cause of action in

tort for breach of covenant of good faith and fair dealing and claim is thus preempted); *Hartenstine v. Superior Court, supra,* 196 Cal.App.3d at 221, 241 Cal.Rptr. at 766 (claims for breach of covenant of good faith and fair dealing and violation of Insurance Code provision regarding unfair claims settlement practices seeking compensatory and punitive damages were preempted by FEHBA); *Blue Cross & Blue Shield of Fla. v. Dept. of Banking, supra,* 613 F.Supp. at 193 (FEHBA preempts Florida's Disposition of Unclaimed Property Act); *LaBelle v. Blue Cross & Blue Shield United of Wisconsin,* 548 F.Supp. 251, 253 (W.D.Wis.1982) (Wisconsin's six-year statute of limitations preempted by contract's two-year limitation). *But see Eidler v. Blue Cross Blue Shield United of Wis.,* 671 F.Supp. 1213, 1217 (E.D.Wis.1987) (while contractual provisions come into play in evaluation of bad faith tort claim, tort claim is not inconsistent with any specific contractual provision).

Appellant relies on *Mooney v. Blue Cross of Western Pennsylvania,* 678 F.Supp. 565 (W.D.Pa.1988) for the proposition that FEHBA § 8902 does not preempt state contract and tort claims. In *Mooney,* the plaintiff sued his insurance providers for breach of contract after they failed to pay claims under his FEHBA policy. The complaint was originally filed in state court but the defendants removed the case to federal district court. The district court, however, relying on the reasoning of the Tenth Circuit Court of Appeals in *Howard v. Group Hospital Service,* 739 F.2d 1508 (10th Cir.1984), concluded that there was no federal question involved, and remanded the case back to the state court.[3]

3. In *Howard v. Group Hosp. Service,* 739 F.2d 1508 (10th Cir.1984), the U.S. Court of Appeals for the Tenth Circuit held that the district court had no federal question jurisdiction over an insured's action for damages in tort and contract arising from insurer's failure to pay claims under a FEHBA policy. The court reasoned that the FEHBA "would not be significantly hindered by different state law interpretations of the medical necessity provision in the Blue Cross plan nor would disputes regarding those provisions involve anyone but private litigants," and that the suit does not seek funds from the United States

The *Mooney* court also noted its disagreement with *Hayes* by stating

> The plaintiff's state law breach of contract claims are not contradictory to the provisions of FEHBP. There are no provisions in FEHBP which govern the interpretation of the rights of the plan participants; their rights are set forth in their contract with the plan providers.

678 F.Supp. at 567.

We disagree with this statement. The federal law, as set forth in the preemption provision of the FEHBA, indeed governs an insured's rights in that it provides that the terms of the contract preempt conflicting state law. Thus, appellant's reliance on *Mooney* is misplaced for several reasons. First, the court in *Mooney* was confronted only with the issue of federal question jurisdiction, not preemption. Second, the only cause of action involved in *Mooney* was breach of contract, not tort. Third, any discussion of preemption was merely *dicta*. Fourth, the rationale of that decision is inconsistent with that of the majority of jurisdictions.

In summary, we find the following. The legislative intent of the FEHBA was to promote uniform application of health plans for federal employees. Appellant's claim that there are no contract provisions limiting her right to bring a tort action is unsupported by the language of the contract stating that "[d]amages recoverable under federal law are limited to the amount of contract benefits in dispute, plus simple interest and court costs," i.e., contract

Treasury. However, the analysis in *Howard* has been found to be irrelevant to the issue of preemption because it "was limited to the contract claim; there was no reference to preemption in the majority opinion, and, as the concurring opinion stated, the existence of a federal preemption defense would be insufficient to invoke the exercise removal jurisdiction." *Hartenstine, supra,* 196 Cal.App.3d at 218, 241 Cal.Rptr. at 764. *Howard* has also been criticized as being contrary to the uniformity purpose of § 8902(m)(1) and for disregarding the jurisdictional provisions of § 8912 which provides that "[t]he district courts of the United States have original jurisdiction, concurrent with the United States Claims Court, of a civil action or claim against the United States founded on this chapter." *Id.* at 219, 241 Cal.Rptr. at 764.

302

damages. Our conclusion that appellant's state tort law claims are preempted by the FEHBA is supported by the majority of jurisdictions that have addressed this issue. Accordingly, we quash appellant's appeal as to the dismissal of her counts for interference with contractual relations and punitive damages and affirm as to the remainder of claims.

Quashed in part. Affirmed in part.